**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Civil Case No.:

| | |
|---|---|
| CLAUDY JOSEPH, JR., as an individual and on behalf of all others similarly situated, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| *vs.* | : |
| | : |
| CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation, | : |
| | : |
| *Defendant.* | : |

## CLASS ACTION COMPLAINT

Plaintiff, CLAUDY JOSEPH, JR. ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files this Class Action Complaint, and alleges against Defendant, CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation, ("Chipotle" or "Defendant"), as follows:

## I. INTRODUCTION

1.      The use of genetically modified organisms ("GMOs") in food has been, and continues to be, controversial.  According to a 2015 Pew Research Center survey, 57% of the public believes that foods made from GMOs are unsafe.[1]

_____

1.      *Public and Scientists' Views on Science and Society:  An Elaboration of the findings in the AAAS Member Survey*, Funk & Lee, *available at*, http://www.pewinternet.org/2015/01/29/public-and-scientists-views-on-science-and-society/ (last visited November 5, 2015).

2.      Accordingly, non-GMO foods have skyrocketed in popularity, and as *Consumer Reports* has reported, either certified organic products (which by definition cannot contain GMOs) or products that carried the "Non-GMO Project Verified" seal saw a staggering 80% increase in sales in 2013[2]. Chipotle's Co-CEO, Steve Ells, boasts of Chipotle's ability to monetize a trend, publicly stating in an October, 2014, interview that:

> We're not best in the world at burritos and tacos. What we're best in the world at is building a people culture… understanding the corresponding economic model and how to tweak that and drive that… That's what we're best in the world at[3].

3.      Seizing upon this anti-GMO public sentiment, Chipotle, which markets itself as making "Food with Integrity," announced in 2013 that it would disclose which of its ingredients were derived from GMOs.

4.      Thereafter, on or about April 27, 2015, Chipotle, as part of its "GM-OVER IT" campaign, officially ended its use of ingredients derived from GMOs in the food it sold to its customers, explaining that "Now, we're well on our way toward ***completely removing genetically modified ingredients from our food*** (emphasis added),"[4] and "In 2015, we succeeded in our quest to switch to serving food made ***only with non-GMO ingredients*** (emphasis added)."[5]

---

2.      http://www.consumerreports.org/cro/magazine/2015/02/gmo-foods-what-you-need-to-know/index.htm      (last visited November 5, 2015).

3.       http://www.fastcompany.com/3036584/generation-flux/i-didnt-know-what-the-fast-food-rules-were-steve-ells (last visited November 5, 2015).

4       https://web.archive.org/web/20150424225544/http://chipotle.com/food-with-integrity (archived April 28, 2015, and last visited November 23, 2015).

5.       *See* http://chipotle.com/food-with-integrity (last visited November 5, 2015).



5.      Chipotle further explained that "when it comes to our food, genetically modified ingredients don't make the cut,"[6] thus implying that not only is Chipotle's food free of GMOs, but that because GMOs are absent from food Chipotle sells, Chipotle's food is, therefore, of higher quality and/or safer than food that is made with ingredients that are derived from GMOs.  It is not.

6.      Nevertheless, upon information and belief – a belief derived from testing of Chipotle's products by an independent laboratory – Chipotle's corn chips, corn tortillas, and other corn products ("Corn Products") do, in fact, contain GMO corn (the "Corn Products").

7.      Consequently, Chipotle's claim that it uses "food made only with non-GMO ingredients" is misleading, and likely to deceive the reasonable consumer, including Plaintiff.

8.      Therefore, Plaintiff brings this class action to secure, among other things, damages and equitable relief, declaratory relief, restitution, and in the alternative to damages, relief for unjust enrichment, for a Class of similarly situated Florida purchasers, against Defendant, for: (1)

---

6.      *See* http://chipotle.com/GMO (last visited November 5, 2015).

false, deceptive, unfair, and unlawful business practices in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq.*; (2) Negligent Misrepresentation; (3) Breach of Express Warranty; (4) Violation of Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and (5) Unjust Enrichment (alleged in the alternative to Plaintiff's other causes of action).

9.      Plaintiff is seeking damages individually and on behalf of the Class.  In addition, Plaintiff is seeking an Order requiring Defendant to cease from representing that the Product is "non-GMO" in its stores and on its website for as long as the Product contains genetically modified ingredients. In the context of the injunctive relief, for Defendant to say only that its ingredients or Product are "non-GMO" is different and distinct from saying that all its ingredients are "non-GMO Project verified."  Based on the totality of its statements Defendant seems to seek the shelter of the non-GMO Project certification standard, while misleading consumers with the "non-GMO" label and without certification of <u>all</u> its ingredients by the non-GMO Project.  Under FDA guidance[7] "non-GMO" means "no GMOs," "GMO free," or only trace GMOs.  Defendant's use of the term "non-GMO" is thus misleading.

10.      Plaintiff expressly does not seek to contest or enforce any state law that has requirements beyond those required by Federal laws or regulations.

11.      All allegations herein are based on information and belief and are likely to have evidentiary support after a reasonable opportunity for discovery.

## II. <u>JURISDICTION AND VENUE</u>

12.      This Court has subject-matter jurisdiction over this matter pursuant to the Class

---

[7]      http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/ucm059098.htm      (last visited December 11, 2015)

Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

13.     Specifically, Plaintiff alleges that the matter in controversy here exceeds $5,000,000.00, exclusive of interest and costs.

14.     Furthermore, Plaintiff is a citizen and resident of the State of Florida and Defendant is a Delaware corporation, with its principal place of business located in Colorado; therefore, the parties are diverse.

15.     Venue is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the Corn Products in this Judicial District.

### III. <u>PARTIES</u>

16.     Plaintiff, CLAUDY JOSEPH, JR., is an individual more than 18 years old, and is a citizen of Florida, who resides in Broward County.

17.     Defendant, CHIPOTLE MEXICAN GRILL, INC., promoted and marketed the Corn Products at issue in this jurisdiction and in this Judicial District.  Defendant is a Delaware corporation, with its principal place of business located in Denver, Colorado.

18.     The Corn Products' advertising, relied upon by Plaintiff, was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein.

19.     The advertising for the Corn Products was designed to encourage consumers to purchase the Corn Products and reasonably misled the reasonable consumer, *i.e.* Plaintiff and the

Class into purchasing the Corn Products.

20.     Defendant is the owner, manufacturer, and distributor of the Corn Products, and is the company that created and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive advertising for the Corn Products.

21.     Plaintiff alleges that, at all times relevant herein, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and at all times relevant herein, each were acting within the purpose and scope of that agency and employment.

22.     Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Corn Products, as well as their respective employees, also were Defendant's agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

23.     In addition, Plaintiff alleges that, in committing the wrongful acts alleged herein, Defendant, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in, and furthered a common scheme to induce members of the public to purchase the Corn Products by means of untrue, misleading, deceptive, and/or fraudulent representations, and that Defendant participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated. Whenever reference in this Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

## IV. <u>FACTUAL ALLEGATIONS</u>

24.    Chipotle is a multi-billion dollar publicly traded company with over 1,500 locations nationwide.

25.    As stated above, Chipotle prides itself by claiming to serve "Food with Integrity."

26.    Chipotle markets its "Food with Integrity" as being "made only with non GMO ingredients" because, as Chipotle explains, ingredients derived from GMOs just "don't make the cut." Chipotle's "Non GMO" representations are made on its website, on its in-store menus, and in interviews/news stories about Chipotle's "Non GMO" campaign.

27.    Certain organizations, such as the non-profit "Non GMO Project" have arisen in recent history, promising to certify food manufacturers whether their food contains GMOs.

28.    The Non GMO Project explicitly states that it provides "Non GMO Project Verified" certification to food containing 0.9% or less of its ingredients derived from GMOs.

29.    But Chipotle did not have the Non GMO Project certify its food products, including its Corn Products.

30.    Rather, Chipotle has proclaimed that it has "remove[d] GMOs from our food"[8] and prepares food "made only with non GMO ingredients."

31.    Steve Ells, founder and co-CEO of Chipotle has stated that "We decided we'd rather avoid GMO ingredients until perhaps the science is more clear. It will not be long before Chipotle is GMO-free."

32.    Chipotle has partnered with "GMO Free Moms" and "commits to [be] 100% GMO Free."

---

8.    *See* FN5.

33.     However, despite the above, and the fact that Chipotle does not define what it subjectively believes "non GMO" to mean, Chipotle, states on its website that:

> It is important to understand that these protocols may not necessarily result in all of our foods being 100% GMO-free. Due to the potential for cross-contamination in fields, facilities or during shipping, it may be that trace amounts of GMOs are present in our food from time to time. For this reason, we identify our ingredients as "non-GMO" rather than "GMO-free" or other terminology that might be misunderstood as a guarantee of absolutely zero genetically engineered content. The United States currently lacks a regulatory definition for "non-GMO" or similar terminology, but private organizations in the U.S. as well as the European Union have put forth standards that allow for food labeled as non-GMO to contain trace amounts (typically up to 0.9%) of genetically modified material.

34.     Significantly, Chipotle does not provide this disclaimer to its in-store customers. Moreover, finding the disclaimer is no easy task.  Specifically, to find the disclaimer requires visiting www.chipotle.com, selecting the "Food with Integrity" tab, locating to the GMO FAQ section, selecting the "How Does Chipotle Know Its Ingredients Are Non GMO," then reading the second paragraph of a lengthy discussion on what other private organizations consider "Non GMO" to mean to them.

35.     Importantly, however, is that Chipotle never had its food certified by these other organizations.  Instead, Chipotle, through its own statements and statements it permitted to be made about its GM-Over It campaign, misled its customers into believing its food did not contain GMOs, even though, upon information, Chipotle knew at all times that as much as 0.9% of its "non GMO" ingredients were actually GMO.

36.     Nevertheless, Chipotle's premium on serving, or rather, claiming to serve its

customers "food made only with non GMO ingredients" has, in turn, served the company and its shareholders well.

37.     Indeed, Chipotle's second quarter included a 14.1% revenue increase, and net income up over 27%, compared to 2014.[9]

38.     However, upon information and belief, Chipotle's Corn Products are made, at least partially, with GMO corn in numbers greater than what the FDA considers "trace" amounts in other contexts.

39.     Consequently, Chipotle's statement that it prepares its food "only with non GMO ingredients," is an unqualified "non GMO," etc., is false, misleading, and likely to deceive the reasonable consumer, such as Plaintiff and members of the Class.

40.     Defendant unlawfully markets, advertises, sells, and distributes the Corn Product to Florida purchasers in its food chains/restaurants as its being "non-GMO" but does not provide any indication that "Non GMO" actually means "some GMO."

41.     At all material times hereto, Defendant sells the Corn Product at a premium price, above other similar products in the marketplace that do not claim to be made with unqualified "Non GMO" ingredients.

42.     Plaintiff purchased the Corn Products in or about the Summer of 2015. Plaintiff and members of the Class were charged a price premium for the Product over and above other products that do not proclaim to be made with "only" Non GMO ingredients"

### A. Defendant's False and Misleading Advertising is Likely to Deceive Reasonable Consumers

43.     Defendant's false and misleading representations and omissions are likely to

---

9.      *See* http://ir.chipotle.com/phoenix.zhtml?c=194775&p=irol-newsArticle&ID=2069647 (last visited October 29, 2015).

deceive Plaintiff and other reasonable consumers.

44.     Reasonable consumers rely on advertising representations and information in making purchase decisions.

45.     Defendant's GMO representations are material to a reasonable consumer's purchase decision because reasonable consumers, such as Plaintiff and members of the Class, care whether food products contain genetically modified ingredients, especially when a product claims to be "non-GMO."

46.     Reasonable consumers attach importance to "non-GMO" claims when making a purchasing decision.

47.     Defendant markets and advertises the Corn Products as "non-GMO" in order to increase sales derived from the Corn Products.  Defendant is well-aware that claims of food being "non-GMO" is material to reasonable consumers.

48.     Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

49.     Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and/or omissions.

50.     Upon information and belief, Defendant made the deceptive representations and/or omissions regarding the Corn Products with the intent to induce Plaintiff's and the other Class members' purchase of the Corn Products.

51.     Defendant's representations and omissions are material because a reasonable consumer attaches importance to such "Non-GMO" statements, and would reasonably be induced to act upon such information in making purchase decisions.

52.     Thus, Plaintiff and the other Class members' reliance upon Defendant's misleading

and deceptive representations and omissions may be presumed.  The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

53.     Upon information and belief, in making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a price premium for the Corn Products over comparable products that are not represented as "Non-GMO," among other things, thus furthering Defendant's private interest of increasing sales for the Corn Products, and decreasing the sales of products by Defendant's competitors that do not make such GMO representations.

54.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that Plaintiff and other Class members:

1)  paid a sum of money for the Corn Products that was not as represented;

2)  paid a premium price for the Corn Products that was not as represented;

3)  were deprived the benefit of the bargain because the Corn Products they purchased were different than what Defendant warranted;

4)  were deprived the benefit of the bargain because the Corn Products they purchased had less value than what was represented by Defendant;

5)  did not receive Corn Products that measured up to their expectations as created by Defendant;

6)  ingested substances that were other than what was represented by Defendant;

7)  ingested substances that Plaintiff and the other members of the Class did not expect or consent to;

8)  ingested substances that are genetically modified;

9)  were denied the benefit of knowing what they ingested; and

10) were denied the benefit of truthful labels and advertising.

55.   Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been economically injured because Plaintiff and the other Class members would not have purchased the Corn Products.

56.   Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

57.   Plaintiff and the other Class members did not obtain the full value of the advertised Product due to Defendant's misrepresentations and/or omissions.

58.   Plaintiff and the other Class members purchased, purchased more of, or paid more for the Product than they would have done had they known the truth about the Corn Products.

### B. Plaintiff's Reliance and Damages

59.   Plaintiff has purchased one or more of the Corn Products in Broward County, Florida, during the Class Period, including, but not limited to a purchase for personal use, in the Summer of 2015, from a Chipotle located in Broward County, Florida.

60.   The Corn Products purchased by Plaintiff claimed to be "Non-GMO" on the in store menu boards and advertising, which Plaintiff perceived, read, and relied on in making Plaintiff's purchase.

61.   However, the Corn Products contain ingredients derived from genetically modified corn, and as a result, the Product is not "Non-GMO."

62.   Plaintiff interpreted the "Non-GMO" claim to mean that the Corn Products did not contain genetically modified ingredients.

63.   Subsequent to purchasing the Corn Products, however, Plaintiff discovered that the same are made from GMO corn.

64.     Plaintiff and members of the Class paid a price premium for the Corn Products because of Defendant's untrue GMO representations.

65.     Plaintiff and members of the Class would not have purchased the Corn Products had they known same were made with GMO corn.

66.     Accordingly, Plaintiff and members of the Class have suffered economic damages as a result of purchasing the Corn Products because the Corn Products were made with GMO corn, Defendant's GMO representations to the contrary notwithstanding.

67.     The Corn Products are valueless, worth less than what Plaintiff and members of the Class paid for, and/or is not what Plaintiff and members of the Class reasonably intended to receive.

68.     Plaintiff and the Class seek damages equal to the aggregate purchase price paid for the Corn Products during the Class Period, as well as injunctive relief described below.

## V. CLASS ACTION ALLEGATIONS

69.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

70.     Pursuant to Rule 23, *Federal Rules of Civil Procedure*, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **All persons who have purchased for personal use one or more of the Corn Products, from April 27, 2015, through and to the date Notice is provided to the Class.**

71.     Plaintiff respectfully reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in

which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

72.     Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass, so that the questions of law and fact are common to all members of the Class and any subclass. All members of the Class and any subclass were and are similarly affected by the deceptive advertising for the Corn Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

73.     Based on the annual sales of the Corn Products and the popularity of the Corn Products, it is readily apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

74.     Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, *inter alia*:

a.     Whether Defendant's business practices violated FDUTPA, FLA. STAT. §§ 501.201, *et seq.*;

b.     Whether the Corn Products are "Non-GMO;"

c.     Whether the ingredients contained in the Corn Products are "Non-GMO;"

d.     Whether the ingredients contained in the Corn Products are genetically modified;

e.     Whether Defendant's GMO representations are material to a reasonable consumer;

f.     Whether the GMO representations on the Chipotle's website and advertising is likely to deceive a reasonable consumer;

g.      Whether the GMO representations made by Defendant are misleading to a reasonable consumer;

h.      Whether a reasonable consumer is likely to be deceived by a claim that products are "Non-GMO" when the products contains genetically modified ingredients;

i.      Whether Defendant was unjustly enriched by the sale of the Corn Products; and

j.      Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

75.     The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

76.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

77.     Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

78.     Certification of this class action is appropriate under Rule 23, *Federal Rules of Civil Procedure*, because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

79.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

80.   Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes.

81.   Further, given the large number of consumers of the Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

82.   A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

83.   The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:
### FOR VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201, *ET SEQ*.

84.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty-three (83) of this Complaint as if fully set forth herein verbatim.

85.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Sections 501.201 to 501.213, *Florida Statutes*.

86.   The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or

practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

87.    Section 501.204(1), *Florida Statutes*, declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

88.    The sale of the Corn Products at issue in this cause was a "consumer transaction" within the scope of FDUTPA.

89.    Plaintiff is a "consumer" as defined by Section 501.203, *Florida Statutes*.

90.    Defendant's Corn Products are goods within the meaning of FDUTPA and Defendant is engaged in trade or commerce within the meaning of FDUTPA.

91.    Defendant's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff and members of the Class, and therefore, violate Section 500.04, *Florida Statutes*.

92.    Defendant has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

93.    Specifically, Defendant has represented that the Corn Products do not contain ingredients derived from GMOs when in fact, the Corn Products are made with genetically modified corn.

94.    Plaintiff and Class Members have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUTPA, in that they purchased and consumed Defendant's mislabeled Corn Products.

95.    Reasonable consumers rely on Defendant to honestly represent the true nature of its ingredients.

96.     Defendant has deceived reasonable consumers, like Plaintiff and members of the Class, into believing the Corn Products were something they were not; specifically that the Corn Products are not made with ingredients derived from GMOs.

97.     The knowledge required to discern the true nature of the Corn Products is beyond that of the reasonable consumer—namely that the Corn Products do or do not contain genetically modified ingredients.

98.     Plaintiff and the Class suffered damages and are entitled to injunctive relief.

99.     Pursuant to sections 501.211(2) and 501.2105, *Florida Statutes*, Plaintiff and members of the Class make claims for damages, attorney's fees and costs.  The damages suffered by the Plaintiff and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant.  Pursuant to Section 501.211(1), *Florida Statutes*, Plaintiff and the Class seek injunctive relief for, *inter alia*, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

100.    Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's violations of FDUTPA.

## VII. SECOND CAUSE OF ACTION:
## <u>NEGLIGENT MISREPRESENTATION</u>

101.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty- three (83) of this Complaint as if fully set forth herein verbatim.

102.    Defendant has negligently represented that the Corn Products are not made with ingredients derived from GMOs.

103.    However, the Corn Products are made with genetically modified corn and, therefore, Defendant has misrepresented a material fact to the public, including Plaintiff and Class

Members, about the Corn Products.

104. The Corn Products are marketed directly to consumers by Defendant, are prepared by Defendant, and do not change from the time the same leaves Defendant's possession until the Corn Products are sold and delivered to consumers.

105. Defendant knows the misstatements on the Corn Products' advertising and in store menu boards are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing to purchase the Corn Products.

106. Defendant has omitted the fact that the Corn Products contain genetically modified ingredients, despite claiming that the same are not made with ingredients derived from GMOs.

107. Defendant knew or should have known that these misstatements or omissions would materially affect Plaintiff's and Class members' decisions to purchase the Corn Products.

108. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on Defendant's representations set forth herein, and, in reliance thereon, purchased the Corn Products.

109. The reliance by Plaintiff and Class members was reasonable and justified in that Defendant appeared to be, and represented itself to be, a nationally recognized and reputable business.

110. Plaintiff and Class members would not have been willing to pay for Defendant's Corn Products if they knew that the same contained ingredients derived from GMOs.

111. As a direct and proximate result of Defendant's misrepresentations, Plaintiff and members of the Class were induced to purchase Defendant's Corn Products, and have suffered damages to be determined at trial, in that, among other things, they have been deprived of the benefit of their bargain because they bought a food product that was not what it was represented

to be, and Plaintiff and members of the Class have spent money on the Corn Products, which, because of the presence of the above-described genetically modified ingredients in them, had less value than was reflected in the premium purchase price they paid for the Corn Products.

112.    Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's negligent misrepresentations.

## VIII. THIRD CAUSE OF ACTION:
## BREACH OF EXPRESS WARRANTY

113.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty- three (83) of this Complaint as if fully set forth herein verbatim.

114.    Defendant has expressly represented that the Corn Products are not made with ingredients derived from GMOs when in fact, the Product is made with genetically modified corn.

115.    The Corn Products are marketed directly to consumers by Defendant, is prepared by the Defendant, and do not change from the time the Corn Products leave Defendant's possession until the same is sold and delivered to consumers.

116.    Plaintiff is informed and believes, and thereon alleges, that Defendant made an express warranty, including that the Corn Products are not made with ingredients derived from GMOs.

117.    Defendant breached this express warranty because the Product contains genetically modified ingredients.

118.    As a proximate result of the failure of the Corn Products to perform as expressly warranted by Defendant, Plaintiff and members of the Class have suffered actual damages in an amount to be determined at trial, in that they were induced to purchase a product they would not have purchased had they known the true facts about it, and have spent money on a food product

that was not what it was represented to be and that lacks the value Defendant represented the Corn Products to have.

119.    Plaintiff gave timely notice to Defendant of its breach of express warranty individually and on behalf of all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on or about October 20, 2015.

120.    Plaintiff seeks all available remedies, damages, and awards as a result of Defendant's breach of express warranty.

### IX. FOURTH CAUSE OF ACTION:
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. §§ 2301 *et seq.*)

121.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty- three (83) of this Complaint as if fully set forth herein verbatim.

122.    Defendant has breached express warranties regarding the Corn Products, as described in the third cause of action above.

123.    Defendant has expressly represented that the Corn Products are not made with ingredients derived from GMOs when in fact, the Corn Products are made with GMO corn.

124.    Plaintiff and the Class are consumers as defined in 15 U.S.C. § 2301(3).

125.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)(5).

126.    The Corn Products are consumer products as defined in 15 U.S.C. § 2301(6).

127.    By reason of Defendant's breach of express warranty, Defendant has violated the statutory rights due to Plaintiff and members of the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C.§§ 2301 *et seq.*, thereby causing damages to Plaintiff and the Class.

128.    Plaintiff gave timely notice to Defendant of its breach of express warranty

individually and on behalf of all members of the Plaintiff Class, directly through a Notice letter sent to Defendant on or about October 20, 2015.

129.     Therefore, Plaintiff and the Class seek all available remedies, damages, and awards under the Magnuson-Moss Warranty Act.

**X. FIFTH CAUSE OF ACTION:**
**UNJUST ENRICHMENT**

130.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs numbered one (1) through eighty- three (83) of this Complaint as if fully set forth herein verbatim.

131.     In its in store menu boards, marketing and advertising, Defendant has made false and misleading statements and/or omissions regarding the Corn Products, as described herein.

132.     Defendant has represented that the Corn Products are not made with ingredients derived from GMOs when in fact, the Corn Products are made with GMO corn.

133.     The Corn Products are marketed directly to consumers by Defendant, is prepared by the Defendant, and do not change from the time the Corn Products leave Defendant's possession until the same is sold and delivered to consumers.

134.     Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Corn Products. Defendant accepted and retained the benefit in the amount of the purchase price and/or profits it earned from sales of the Corn Products to Plaintiff and other Class members.

135.     Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain said benefit.

136.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions, as set forth herein. Defendant is

aware that the claims and/or omissions that it makes about the Corn Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class.

137.    Plaintiff and Class members do not have an adequate remedy at law against Defendant (in the alternative to the other causes of action alleged herein).

138.    Accordingly, the Corn Products are valueless such that Plaintiff and Class members are entitled to restitution in an amount not less than the purchase price of the Corn Products paid by Plaintiff and Class members during the Class Period.

139.    Plaintiff and Class members are entitled to restitution of the excess amount paid for the Corn Products, over and above what they would have paid if the Corn Products had been adequately advertised, and Plaintiff and Class members are entitled to disgorgement of the profits Defendant derived from the sale of the Corn Products.

## XI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's attorneys Class counsel;

2.    For an award of equitable relief for all causes of action as follows:

(a)    Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the design, testing, manufacture, assembly, development, marketing, advertising, or sale of the Product for the purpose of selling the Corn Products in such manner as set

forth in detail above, or from making any claims found to violate FDUTPA or the other causes of action as set forth above;

(b)   Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this Complaint;

(c)   Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive act or practices; and

(d)   Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described herein.

3.   For actual damages in an amount to be determined at trial for all causes of action;

4.   For an award of attorney's fees and costs;

5.   For any other relief the Court might deem just, appropriate, or proper; and

6.   For an award of pre- and post-judgment interest on any amounts awarded.

## XII. DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully Submitted By,

Dated: December 11, 2015

*/s/ Joseph M. Pustizzi*
Joseph M. Pustizzi, Esq.
Fla. Bar No.:  70362
**LAW OFFICE OF JOSEPH PUSTIZZI, P.A.**
3440 Hollywood Blvd., Ste. 415
Hollywood, FL 33021
(954) 241-4244
Email: *joseph@pustizzilaw.com*


Michael T. Fraser, Esq.
Fla. Bar No.:  87411
**THE FRASER LAW FIRM, P.C**
4120 Douglas Blvd., Ste. 306-262
Granite Bay, CA 95746
(888) 557-5115

(866) 212-8434 (fax)
Email: *mfraser@thefraserlawfirm.net*

Attorneys for Plaintiff Claudy Joseph, Jr.
and the Proposed Class